**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CYNTHIA CHLARSON,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:21-cv-1046** |
| | § | |
| **EK REAL ESTATE SERVICES OF NY,** | § | |
| **LLC, AN AFFILIATE OF EASYKNOCK,** | § | |
| **INC., EASYKNOCK, INC., AND** | § | |
| **LENDINGONE, LLC,** | § | |
| *Defendants*. | § | |

## ORIGINAL COMPLAINT

Plaintiff **CYNTHIA CHLARSON** ("**CHLARSON**") files this *Original Complaint* against the unauthorized, predatory lending tactics of Defendants **EK REAL ESTATE SERVICES, OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **LENDINGONE, LLC**, and seeks redress for, among other causes, multiple violations of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* (hereinafter TILA) and Federal Reserve Board of Regulation Z, 12 C.F.R. § 226 promulgated pursuant thereto, and multiple violations of Texas Finance Code, including §§ 305.001, *et seq.*, and §§ 341.001, *et seq.,* and in support thereof would show the Court as follows:

## PARTIES

1.     Plaintiff **CYNTHIA CHLARSON** ("**CHLARSON**") is a resident of Bexar County, Texas and is the person who owned the real property at issue in this suit.

2.     Defendant **EK REAL ESTATE SERVICES OF NY, LLC, an Affiliate of EASYKNOCK, INC. ("EK REAL ESTATE"),** is a foreign limited liability company organized and existing under the laws of the State of Delaware but, as of September 27, 2019, is authorized

to do business in the State of Texas. **EK REAL ESTATE** conducted business in this State before that time, including in connection with the transactions at issue in this lawsuit, without properly being authorized to do so. **EK REAL ESTATE's** principal office is located at 79 Madison Avenue, 5th Floor, New York, NY 10016, and it may be served with a copy of this *Original Complaint* by and through its registered agent for service, Corporation Services Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Travis County, Texas 78701.

3.      Defendant **EASYKNOCK, INC., ("EASYKNOCK")** is a foreign corporation organized and existing under the laws of Delaware whose principal office is 215 Park Avenue South, Suite 1713, New York, NY 10003. **EASYKNOCK** is the sole member of Defendant **EK REAL ESTATE**. **EASYKNOCK** regularly engages in business in Texas without registering with the Texas Secretary of State for the right to do business in Texas, including in connection with the transactions at issue in this lawsuit; thus, **EASYKNOCK** may be served through the Texas Secretary of State pursuant to FED. R. CIV. P. 4(h)(1)(A) and TEX. CIV. PRAC. & REM. CODE § 17.044, via US Mail: Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079, or via Overnight Delivery: Service of Process, Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

4.      Defendant **LENDINGONE, LLC ("LENDINGONE")** is a foreign corporation organized and existing under the laws of the State of Delaware but, as of July 2, 2020, is authorized to do business in the State of Texas. **LENDINGONE** conducted business in this State before that time, including in connection with the transactions at issue in this lawsuit, without properly being authorized to do so. **LENDINGONE's** principal office is located at 901 Northwest 51st Street, Suite 150, Boca Raton, FL 33431, and it may be served with a copy of this *Original Complaint* by

serving its registered agent for service Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Travis County, Texas 78731.

## JURISDICTION

5.      Jurisdiction is proper in this Court for the violations of the Truth-In-Lending Act pursuant to 15 U S.C. §§ 1601, *et seq.*, as well as 28 U.S.C. §§ 1331 and 1337. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs. This Court has jurisdiction over the Texas state law claims under principles of pendent and ancillary jurisdiction.

6.      This Court has general personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **LENDINGONE** under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant has purposefully availed itself of the benefits of conducting business in Texas, each Defendant's contacts with Texas are continuous and systematic, and each Defendant can be considered essentially at home in Texas. This Court also has specific personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **LENDINGONE** under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant purposefully directed its wrongful activities at Plaintiff **CHLARSON**, a resident of the forum, each Defendant's conduct caused, and Plaintiff **CHLARSON's** suit seeks redress for, harm caused by each of Defendant's wrongful actions which either took place inside of the forum and/or were purposefully directed at Plaintiff **CHLARSON** in the forum.

**VENUE**

7.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) and Tex. Fin. Code § 349.401 since this case arises from a dispute concerning real property situated in Bexar County, Texas and because Bexar County, Texas is a judicial district in which the underlying transactions and a substantial part of the events or omissions giving rise to the claims occurred. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because, for venue purposes, each Defendant is deemed to reside in Bexar County, Texas since each Defendant is subject to the court's personal jurisdiction in this judicial district with respect to this civil action in question and, for venue purposes, all Defendants are deemed residents of the State in which the district is located.

**FACTS**

8.      On or about July 2017, Plaintiff **CHLARSON** purchased a house and the real property located at 11840 Sandman Drive, San Antonio, Texas 78216 ("the Property"). **CHLARSON** resided at the Property continuously since that date. At the time of the transactions at issue in this dispute, the Property was designated as **CHLARSON's** residential homestead.

9.      In Fall 2018, **CHLARSON** was dealing with financial problems and needed access to her home equity.  On two occasions, she applied for a traditional home equity loan, but was denied due to her poor credit and low income. Her home was paid off, but at that time, **CHLARSON** was unable to borrow money from a conventional financial institution because of credit issues, low income, and the Property being her homestead.  When her daughter needed a medical procedure during a high-risk pregnancy, **CHLARSON** needed money quickly to help her daughter pay for the procedure.

10.      In November 2018, **CHLARSON** found a Facebook advertisement promoting a transaction for accessing home equity from Defendant **EASYKNOCK**, the sole Member of **EK**

**REAL ESTATE**. Upon information and belief, **EASYKNOCK** used online target ad words to increase its visibility on searches for home equity lenders and to target its advertisements on Facebook to people like **CHLARSON** who search for low income, no credit check, home equity loans.

11.      As part of a follow-up with this potential home equity lender, **EASYKNOCK** indicated to **CHLARSON** that it would loan her money in exchange for the security of a Deed to the Property and the execution of a lease agreement. This type of transaction is known as a "Sale-Leaseback," and it is highly disfavored in Texas, particularly when the transaction involves a Texas citizen's homestead. **EASYKNOCK** represented that the lease agreement would include an option to pay off **EASYKNOCK**'s loan, which would be secured by a portion of **CHLARSON's** equity in her Property. **EASYKNOCK** also promised **CHLARSON** that she would retain the equity in her Property.

12.      All communications concerning the transaction between **CHLARSON** were with **EASYKNOCK** and its employees or representatives. All material sent to **CHLARSON** was sent by **EASYKNOCK,** the sole Member to Defendant **EK REAL ESTATE**.

13.      In their online advertising and during several calls and email communications in November 2018 to June 2019 with members of **EASYKNOCK's** so-called "Transaction Team," Defendants **EASYKNOCK** and **EK REAL ESTATE** assured **CHLARSON** that she could "release" the home equity in her Property and either repay the "loan" and gain back her homestead Property. **CHLARSON** understood from these communications that **EASYKNOCK's** program would operate as a loan secured by equivalent equity in her Property. In the interim, **CHLARSON** was told she would continue to live in her home and make monthly payments to **EASYKNOCK** just like she would for any traditional home equity loan. **CHLARSON** believed that the monthly

rent payments would be credited towards payment of the loan. After being unable to qualify for a home equity loan from conventional financial institutions, **CHLARSON** believed that **EASYKNOCK's** program was the same thing as a home equity loan but had less stringent requirements than a conventional financial institution. **CHLARSON** only ever intended the transaction to be a home equity loan, not a complete sale of her rights and interest in her homestead.

14.     **EASYKNOCK's** solicitations included the term "#ReLease Equity" and referred to their program as a method to "release" home equity. Further, **EASYKNOCK's** solicitations and program materials from **EASYKNOCK's** so-called "Transaction Team" described that **CHLARSON** would need to complete a credit and criminal background check and provide certain income documents (3 recent pay stubs and 3 months of her bank statements) as part of **EASYKNOCK's** "credit authorization." Clearly, Defendants **EK REAL ESTATE** and **EASYKNOCK** recognized that the transaction made the basis of this suit was a "loan" requiring credit and income authorization and that they were acting as "lenders."

15.     None of Defendants **LENDINGONE, EASYKNOCK,** or **EK REAL ESTATE** is a qualified lender in Texas with the Texas Office of Consumer Credit Commission (OCCC). At the time of these transactions, none of the Defendants were even registered to conduct any type of business in Texas—despite them regularly doing so.

16.     **EASYKNOCK**'s solicitations referred to its program as an "equity release program" and that **CHLARSON** would be able to "tap into [her] home's equity"—language strongly indicating a home equity loan. Despite not being a qualified lender in Texas at the time of the "Sale-Leaseback" transaction, Defendants **EASYKNOCK** and **EK REAL ESTATE** represented to **CHLARSON** that they were going to "release" a portion of equity in her Property. To induce **CHLARSON** to close on their "Sale-Leaseback" loan transaction, Defendants

**EASYKNOCK** and **EK REAL ESTATE** told **CHLARSON** that she would always retain a portion of the equity in her home and could buy back her home "at a set price" and once again be a 100% owner of the equity in her Property or she could "cash out entirely" if/when she was ready to move.

17.     **CHLARSON** wanted to access only a portion of her home equity, but **EASYKNOCK** told her that in order to qualify for its program, she would need to obtain the "loan" in a higher amount than she needed. Because of her daughter's time-sensitive medical procedure and immediate need for cash as it was a life-or-death situation, **CHLARSON** felt pressured to agree to enter the transaction for the entire amount of her equity in the Property. Believing that the proposed transaction was for a home equity loan—not a complete sale of her rights and interest in her homestead—**CHLARSON** reluctantly agreed to proceed with Defendants **EASYKNOCK** and **EK REAL ESTATE**'s proposed transaction.  Shortly thereafter, on or about June 27, 2019, **CHLARSON** moved forward with the transaction.

18.     **CHLARSON** was not aware that the transaction involved a total sale of her home to **EASYKNOCK** and **EK REAL ESTATE** until a notary sent by **EASYKNOCK** and **EK REAL ESTATE** came to her home to execute the deed documents, and after she had already signed the purchase agreement for her home. Before executing the deed instruments, **CHLARSON** had no opportunity to review them. However, while the notary was at her home with the documents ready to execute, **CHLARSON** believed that had no other choice because she needed money quickly to help her daughter with her life-or-death medical procedure. **CHLARSON** ultimately agreed to go forward with **EASYKNOCK** and **EK REAL ESTATE's** "Sale-Leaseback" loan transaction.

19.     Based on their representations about what amounted to a home equity loan, on or about June 27, 2019, **CHLARSON** deeded the Property to Defendant **EK REAL ESTATE**. *(See Exhibit A – General Warranty Deed with Vendor's Lien which is attached hereto and incorporated herein for all purposes.)* The Warranty Deed contained a Vendor's Lien in favor of Defendant **LENDINGONE**, who apparently had loaned to **EK REAL ESTATE** the sum of $82,000.00 to facilitate the "Sale-Leaseback" loan transaction for the Property. Upon information and belief, Defendant **EK REAL ESTATE** further executed a *Note, Deed of Trust, Commercial Security Agreement and Assignment of Rents* in favor of Defendant **LENDINGONE**.

20.     Defendant **LENDINGONE** advertises itself as a specialized mortgage lender which provides lending in all states except for Alaska, Nevada, North Dakota, South Dakota, and Utah. **LENDINGONE** is a licensed lender in four states: Arizona, Minnesota, Oregon, and Vermont. As a licensed lender, **LENDINGONE** is or should be familiar with the requirements and restrictions imposed on mortgage lenders under federal and Texas law, including those found in the Truth in Lending Act, the Texas Finance Code, and the Texas Property Code.

21.     Defendant **LENDINGONE** either did know or should have known that Defendants **EASYKNOCK** and **EK REAL ESTATE's** "Sale-Leaseback" loan transaction with **CHLARSON** and tens (if not hundreds) of other Texas citizens failed to comply with these requirements and restrictions. Nevertheless, Defendant **LENDINGONE** facilitated and enabled Defendants **EASYKNOCK** and **EK REAL ESTATE's** scheme by providing funding for a substantial portion of their improper loan transactions in Texas, including **CHLARSON's**.

22.     As a further part of these transactions, **CHLARSON** entered into a *Lease with Tenant Option Agreement* with Defendant, **EK REAL ESTATE**. *(See Exhibit B – Lease with Tenant Option Agreement which is attached hereto and incorporated herein for all purposes.)* The

Lease was for an initial period of twelve (12) months at a rental rate of $18,432.00 per year ($1,536.00.00 per month) with the first payment being a prorated amount for June 2019, due and payable at closing on June 27, 2019. At closing, **EASYKNOCK** and **EK REAL ESTATE** held back the sum of $18,432.00 for advanced rent to cover twelve months from which $1,536.00 was being used as a credit towards each month towards the monthly rent payment.

23.     The Lease was renewable for consecutive one-year terms for three years, and if certain conditions were met, **CHLARSON** could pay off the loan by "repurchasing" **EASYKNOCK's** secured interest in the Property. At the end of the three-year period, **CHLARSON** would have to buy back or sell the Property. To do so, however, **CHLARSON** would have to tender a payment of $81,900.00, which amount escalated on an annual basis (at a rate equal to no less than 102.5% of the prior year's amount), plus all closing costs (including, but not limited to, broker's commissions, transfer taxes, attorney's fees, and filing fees) paid by Defendant **EK REAL ESTATE**. In the interim, **CHLARSON** was responsible for paying all Rent and Additional Expenses due Defendant **EK REAL ESTATE** under the Lease.

24.     Pursuant to the initial Purchase Agreement executed May 31, 2019, the amount **CHLARSON** would have to tender to pay off the loan was $59,000.00.  However, **EK REAL ESTATE** amended the contract on June 26, 2019 to increase the amount to $81,900.00 without any reasonable explanation. Additionally, in the same amendment to the contract, the Rent was increased from $14,325.00 to $18,432.00—over $4,000 more than what was originally set forth in the Purchase Agreement—again, without any reasonable explanation.

25.     For the "right" to enter into a Lease for her Property, **EK REAL ESTATE** charged **CHLARSON** $117,000.00, an amount charged against and deducted from the $195,000.00 alleged "Contract Sales Price." Additionally, the $18,432.00 per year base rent for year one of the

9

Lease escalated in every consecutive one-year term of the Lease at a rate of at least 2.5%. After the "Sale-Leaseback" loan transaction, **CHLARSON** remained solely responsible for all repairs and maintenance on the Property. If Defendant **EK REAL ESTATE** paid for any repairs or maintenance, **CHLARSON**, as the Tenant was responsible for reimbursement to Defendant **EK REAL ESTATE** as "Additional Expenses."

26.    Upon information and belief, the monthly rent charged by Defendants **EASYKNOCK** and **EK REAL ESTATE** to **CHLARSON** exceeded the rental rates in San Antonio, Texas for similar properties. Indeed, Defendants **EASYKNOCK** and **EK REAL ESTATE** used a set formula (and not market rates) to charge victims of their wrongful "Sale-Leaseback" loan scheme, like Plaintiff **CHLARSON**, monthly rent equal to approximately 0.75% of the equity amount **LENDINGONE** provided **EASYKNOCK** and **EK REAL ESTATE** at close (9% interest per year) *plus* prorated taxes and insurance for the Property. Thus, the monthly "rent" to **EASYKNOCK** was not designed based on market rates for leasing properties like **CHLARSON's**. Rather, this monthly payment termed "rent" consisted of every amount that this transaction would cost **EASYKNOCK** on a monthly basis—monthly insurance, monthly property taxes, and monthly interest on **LENDINGONE's** loan to **EASYKNOCK** and **EK REAL ESTATE**. And **EASYKNOCK** and **EK REAL ESTATE** took security on the front end of this transaction in the form of **CHLARSON's** entire equity value in her home, rather than just the value of the equity needed to secure the amount funded. **EASYKNOCK** and **EK REAL ESTATE** did this surreptitiously to ensure that its transaction costs would always be covered by **CHLARSON's** alleged retained equity in the Property, not just the equity covered by its home equity loan funding. All invoices for the rent, past due rent, and other charges came from Defendant **EASYKNOCK.**

10

27.     Defendants never asked for, nor did they ever receive, a waiver of homestead from **CHLARSON** in the "Sale-Leaseback" loan transaction.

28.     Upon information and belief, **EK REAL ESTATE** and **EASYKNOCK** obtained an appraisal to justify the $195,000.00 value ascribed to **CHLARSON's** Property.

29.     Despite having at least $195,000.00 in equity in her Property, at the closing, **CHLARSON** received "net sales proceeds" of only $39,753.55 out of the listed $195,000.00 "Contract Sales Price." In addition to outrageous closing costs burdened upon **CHLARSON** by Defendants, on the Settlement Statement, Defendants **EK REAL ESTATE** and **EASYKNOCK** deducted a charge of $117,000.00 as a "Termination Option Price" from **CHLARSON's** remaining equity in the Property. *(See Exhibit C – HUD – Settlement Statement which is attached hereto and incorporated herein for all purposes.)*

30.     In essence, Defendants stole **CHLARSON's** property worth at least $195,000.00 for a total of only about $39,753.55 in payment to **CHLARSON** at closing.

31.     At the same time, pursuant to the "Sale-Leaseback" scheme, Defendants **EK REAL ESTATE** and **EASYKNOCK** strapped **CHLARSON** to rental payments of $18,432.00 for the first twelve months of a lease, a rental amount which escalated over each consecutive one-year period before **CHLARSON** had the opportunity to "purchase" back the Property for the sum of $81,900.00 (which also escalated on an annual basis), *plus* all amounts paid by **EK REAL ESTATE** at closing. **CHLARSON** was also responsible for Defendant **EK REAL ESTATE's** inflated closing costs and any other Rent or Additional Expenses that were due.

32.     No disclosures were provided to **CHLARSON** by either Defendants **EASYKNOCK** or **EK REAL ESTATE** pursuant to the Truth-In-Lending Act or the Texas

Finance Code, which require the following disclosures, among others, be given to **CHLARSON** before she entered into this transaction:

      a.      Full disclosure of loan costs and terms;

      b.      The right of rescission;

      c.      Disclosing to the borrower when mortgage was reassigned;

      d.      Disclosure of the caps on high mortgage costs; and

      e.      Assessing whether the borrower had the ability to repay the loan prior to entering into the transaction with the borrower.

33.      Indeed, neither **EASYKNOCK** nor **EK REAL ESTATE** (nor **LENDINGONE**) conducted any substantive assessment of **CHLARSON's** financial ability to repay the "loan" or to pay the monthly Rent, Additional Expenses, or other amounts due under the Lease. All they did was request **CHLARSON's** three most recent pay stubs and three months of bank statements, which would have clearly demonstrated that she did not have the ability to the Rent and Additional Expenses. Defendants **EK REAL ESTATE** and **EASYKNOCK** knew that **CHLARSON** did not have the necessary income to meet rent payments prior to entering into the "Sale-Leaseback" loan transaction. Thus, Defendants knew **CHLARSON** would be unable to pay the monthly and other Lease payments, let alone qualify for another loan to regain title to her residential homestead Property.

34.      **CHLARSON** was able to live in the Property for the first year under the Lease when the rent payments were being applied under the Rent Holdback. However, after the initial year under the Lease, **CHLARSON** immediately fell behind on rent payments. When she was late on rent, **EASYKNOCK** and **EK REAL ESTATE** assessed at least $100 in late fees each time, which made it even more difficult for her to catch up on rent. She has been in arrears since August

1, 2021 and **EASYKNOCK** and **EK REAL ESTATE** have threatened to file eviction proceedings against her.

## SUIT TO QUIET TITLE TO THE PROPERTY

35.     Plaintiff **CHLARSON** adopts all preceding paragraphs as if recited verbatim herein.

36.     Plaintiff **CHLARSON** was the fee simple owner of the Property which was her homestead prior to the sale-leaseback transaction made the subject of this suit.  Section 41.006 of the Texas Property Code, states as follows:

(a)     Except as provided by Subsection (c), any sale or purported sale in whole or in part of a homestead at a fixed purchase price that is less than the appraised fair market value of the property at the time of the sale or purported sale, and in connection with which the buyer of the property executes a lease of the property to the seller at lease payments which exceed the fair market rental value of the property, is considered to be a loan with all payments made from the seller to the buyer in excess of the sales price considered to be interest subject to Title 4, Finance Code.

(b)     The taking of any deed in connection with a transaction described by this section is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and the deed is void and no lien attaches to the homestead property as a result of the purported sale . . .

37.     Although, Defendant **EK REAL ESTATE** claimed that it was purchasing **CHLARSON's** property for $195,000.00, **CHLARSON** only received the sum of $39,753.55 from those "sales" proceeds and executed a *Lease with Tenant Option* leasing back the Property at a rental rate that exceeded similar properties in San Antonio, Texas, especially given the condition the Property was in at the time of the "pretend sale" and leaseback.  Thus, **EK REAL ESTATE** "purchased" **CHLARSON's** property for far less than the appraised market value at the time of the purported sale, and all payments made (and charges debited) from **CHLARSON** to **EK REAL ESTATE** and **EASYKNOCK** in connection with the leaseback far exceed the fair

13

market rental value of the Property. For these reasons, the "sale-leaseback" transaction is deemed a loan under the Texas Property Code, all payments made from **CHLARSON** to **EK REAL ESTATE** and **EASYKNOCK** in excess of the sales price are considered interest subject to the Texas Finance Code, the deed conveyed as part of the transaction is **VOID** and no lien ever legally attached to **CHLARSON's** homesteaded Property.  At the time of the transaction, Defendant **EK REAL ESTATE** borrowed from Defendant **LENDINGONE** the sum of $82,000.00 and **LENDINGONE** filed a Deed of Trust against Plaintiff **CHLARSON's** Property. As a result, Plaintiff **CHLARSON** seeks to quiet title to the Property voiding the *General Warranty Deed with Vendor's Lien* given to Defendant, **EK REAL ESTATE** and the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **LENDINGONE.** Given that this is an impermissible transaction under § 41.006 of the Texas Property Code, **CHLARSON** asks the Court to find that Defendants **EK REAL ESTATE** and **LENDINGONE** have no interest, legal, equitable or otherwise to her Property and that Plaintiff **CHLARSON** is the rightful owner of the Property.

## DECLARATORY JUDGMENT

38.    Plaintiff **CHLARSON** adopts all preceding paragraphs as if recited verbatim herein.

39.    Plaintiff **CHLARSON** is entitled to declaratory relief under the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code. Plaintiff seeks the following declarations:

    a.    That Defendants **EK REAL ESTATE, EASYKNOCK** and **LENDINGONE** have no rights, title or ownership interest in the Property; and

    b.    That the General Warranty Deed with Vendor's Lien executed by **CHLARSON** on June 27, 2019 is void as a matter of law;

14

    c.      That the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **LENDINGONE** is void; and

    d.      That **CHLARSON** is the rightful owner of the Property.

    e.      The Property at issue in this dispute was **CHLARSON's** residential homestead;

    f.      Because the Property was **CHLARSON's** residential homestead, any transaction associated with the Property required compliance with the Texas Property Code, including the restrictions of Tex. Prop. Code § 41.006(a) and (b);

    g.      Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **LENDINGONE's** taking of a deed in connection with the Sale-Leaseback transaction at issue in this case is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code (Tex. Bus. & Com. Code § 17.41, *et seq.*);

    h.      Defendants' deed in connection with the underlying Sale-Leaseback transaction is void and no lien legally attached to **CHLARSON's** residential homestead property (the Property) as a result of the purported sale;

    i.      The Sale-Leaseback transaction at issue in this case is a "loan" under the Texas Finance Code, *see* Tex. Fin. Code § 341.001(9) and (10), and is subject to the requirements of Texas Finance Code § 342.001, *et seq.* (Consumer Loans) and § 343.001, *et seq.* (Home Loans).

    j.      The Termination Option Price, Rent, and Additional Expenses are considered interest under the Texas Property Code.

40.      Plaintiff has retained the law firms of Robin M. Ziek, Pogach PLLC, and Feldman & Feldman, P.C. to represent her in this action and has agreed to pay the foregoing attorneys their reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fee in the amount of at least $100,000.00 or an amount as determined by the trier of fact to Plaintiff would be equitable and just and, therefore, authorized by § 37.009 of the Tex. Civ Prac. & Rem. Code.

## VIOLATIONS OF THE TRUTH IN LENDING ACT

41.     Plaintiff **CHLARSON** adopts all preceding paragraphs as if recited verbatim herein.

42.     Plaintiff **CHLARSON** is a natural person.

43.     At all times relevant hereto, Defendants **EASYKNOCK** and **EK REAL ESTATE** regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making Defendants a creditor within the meaning of the TILA, 15 U.S.C. § 1602(g) and Regulation Z § 226.2(a)(17). Under Texas law, a sale-leaseback transaction, like the one at issue in this case, is a "loan." *See* Tex. Fin. Code § 341.001(9) and (10).

44.     The transaction in question is a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z § 226.2. The security for the transaction is the primary dwelling of **CHLARSON**.

45.     Defendants **EASYKNOCK** and **EK REAL ESTATE** did not provide to Plaintiff **CHLARSON** a Truth-In-Lending Disclosure statement and as a result violated the requirements of the Truth-In-Lending Act in the following ways, among others:

    a.     By failing to provide the required disclosures prior to the consummation of the transaction in violation of 15 U.S.C. §§ 1638(b) and 1639, and Regulation Z § 226.17(b);

    b.     By failing to make the required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. §§ 1632(a) and 1639, and Regulation Z § 226.17(a);

    c.     By failing to include in the finance charges certain charges imposed by Defendants payable by Plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 226.18(d);

d.      By failing to calculate and disclose finance charges on the amount financed per 15 U.S.C. § 1606 and Regulation Z § 226.22;

e.      By failing to disclose that **CHLARSON** had a right of rescission;

f.      By failing to disclose to **CHLARSON**: "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan," as per 15 U.S.C. § 1639; and

g.      By failing to meet the minimum standards for residential mortgage loans per 15 U.S.C. § 1639c, including the ability to repay standards and the prohibition on arbitration agreements in connection with **CHLARSON's** principal dwelling.

46.     By reason of the aforesaid violations of the TILA and Regulation Z, Defendants are liable to Plaintiff **CHLARSON** in the amount of twice the finance charge, actual damages to be established at trial, attorney's fees and costs, and any other amounts provided for under 15 U.S.C. § 1640.

## TEXAS DECEPTIVE TRADE PRACTICES

47.     Plaintiff **CHLARSON** adopts all preceding paragraphs as if recited verbatim herein.

48.     Plaintiff is a consumer under the Texas Deceptive Trade Practices Act ("DTPA") because Plaintiff is an individual who sought goods or services by purchase/lease.

49.     Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in false, misleading, or deceptive acts that Plaintiff relied on to Plaintiff **CHLARSON's** detriment. Specifically, Defendants violated the DTPA, among others, as follows:

a.      Representing that an agreement confers or involves rights, remedies, or obligations that it does not or that are prohibited by law.

b.      Failing to disclose information about goods and services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information had been disclosed.

    c.    Causing confusion or misunderstanding about the source, sponsorship, approval or certification of goods or services by another.

50.    More specifically, as described throughout this Complaint:

    a.    The Sale-Leaseback loan transaction is a transaction that involves real property in Texas, namely the Property.

    b.    Defendants **EASYKNOCK** and **EK REAL ESTATE** made multiple misrepresentations, and they concealed or failed to disclose facts to Plaintiff despite a duty to do so.  Among other things, as described more specifically above, **EASYKNOCK** and **EK REAL ESTATE** falsely and misleadingly represented that they were authorized under Texas law to enter into the loan transaction that is the basis of this suit and that the Sale-Leaseback loan transaction was a home equity loan.

    c.    Defendants made additional false, deceptive, and material representations in their marketing materials.  As described above, Defendants' marketing materials and emails described their Sale-Leaseback transaction to **CHLARSON** as an opportunity to "release" or "tap into" the equity in her home and that "part of the equity remains with [**CHLARSON's**] home," and that **CHLARSON** would retain at least a portion of her home equity.

    d.    Defendants made these misrepresentations and concealed/failed to disclose facts to induce Plaintiff to enter into the Sale-Leaseback transaction for her Property.

    e.    Defendants knew Plaintiff was unaware of the concealed/undisclosed facts and did not have an equal opportunity to discover these facts. Defendants were deliberately silent when they had a duty to speak about the concealed/undisclosed facts.

    f.    The representations and omissions were material and false.

    g.    Defendants made these representations or omitted material facts with the intent that Plaintiff relies on the representations or omissions.

    h.    Plaintiff relied on these representations and Defendants' nondisclosure.

    i.    **CHLARSON** would not have entered into the transaction had Defendants disclosed facts regarding the transaction.

      j.  Defendants' misrepresentations and nondisclosure are a producing cause of **CHLARSON**'s injuries.

51.    Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in an unconscionable action or course of action that, to Plaintiff **CHLARSON's** detriment, took advantage of Plaintiff **CHLARSON's** lack of knowledge, ability, experience, or capacity to a grossly unfair degree. Specifically, Defendants **EK REAL ESTATE** and **EASYKNOCK** induced Plaintiff **CHLARSON** into entering into a "loan" transaction which was prohibited by law concerning her homestead knowing that neither Defendant was qualified as lenders with the Texas Office of Consumer Credit Commission to lend against Plaintiff **CHLARSON's** homestead. Defendants **EK REAL ESTATE** and **EASYKNOCK** knew or should have known that **CHLARSON** did not have the ability to pay back the loan on the onerous lending terms and rates and at charges that exceeded the maximum rates allowed by law.

52.    Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in false, misleading, or deceptive acts or practices that Plaintiff relied upon to Plaintiff **CHLARSON's** detriment and that violated a "tie-in" consumer statute, specifically § 41.006 of the Texas Property Code when Defendants induced Plaintiff **CHLARSON** into entering into a "Sale-leaseback" transaction on her homestead. Furthermore, the marketing materials sent to Plaintiff **CHLARSON** by Defendant **EASYKNOCK** concerning the transaction referred to "accessing," "releasing," or "tapping into" the "equity" in her home, thus confusing this type of transaction with a home equity loan.

53.    **CHLARSON** did not discover, and through the exercise of reasonable diligence could not have discovered, the occurrence of Defendants **EK REAL ESTATE** and **EASYKNOCK's** false, misleading, and deceptive acts and practices until after she had already finalized the transaction with **EK REAL ESTATE** and **EASYKNOCK**.

54.     It was impracticable for Plaintiff **CHLARSON** to give Defendants **EASYKNOCK** and **EK REAL ESTATE** pre-suit written notice under the Texas Business & Commerce, § 17.505(a) ("DTPA") because Plaintiff is being threatened with immediate eviction. Therefore, pre-suit written notice was not required.

55.     Defendants' wrongful conduct was a producing cause of Plaintiff **CHLARSON's** injuries which resulted in the following damages:

      a.     Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court;

      b.     Defendants acted knowingly and intentionally which entitled Plaintiff to recover mental-anguish damages under the Texas Business & Commerce Code § 17.50(b)(1) in an amount to be determined by the trier of fact;

      c.     Defendants acted knowingly and intentionally which entitles Plaintiff to recover treble economic and mental anguish damages under the Texas Business & Commerce Code § 17.50(b)(1); and

      d.     Plaintiff is entitled to recover reasonable and necessary attorney's fees for prosecuting this suit under Texas Business & Commerce Code § 17.50(d) in an amount to be determined by the trier of fact.

## USURY UNDER THE TEXAS FINANCE CODE

56.     Plaintiff **CHLARSON** adopts all preceding paragraphs as if recited verbatim herein.

57.     On or about June 27, 2019, Defendants **EK REAL ESTATE** and **EASYKNOCK** loaned money to Plaintiff **CHLARSON** disguised as a "Sale-Leaseback" loan transaction. The loan between **CHLARSON** and Defendants **EASYKNOCK** and **EK REAL ESTATE**, in which **LENDINGONE** participated, only provided **CHLARSON** with $39,753.55 in cash. Defendants **EK REAL ESTATE** and **EASYKNOCK** had the Property appraised to look like a $195,000.00 sale to them from **CHLARSON**. From a purported sale of the Property for the sum of $195,000.00,

Plaintiff received a total value of $39,753.55. Disguised as a Termination Option Price on the HUD form, Defendants **EK REAL ESTATE** and **EASYKNOCK** took a $117,000.00 fee and other fees against the sales price.

58.     Plaintiff **CHLARSON** had an obligation to repay the principal amount of Defendants' loan as seen in the option to repurchase the Property.

59.     Defendants **EK REAL ESTATE** and **EASYKNOCK** contracted for and received interest that exceeded the maximum amount allowed by law by charging excessive fees including without limitation to the following:

a.     Termination Option Price - $117,000.00;

b.     Seller Concession of $5,910.00;

c.     Lease Payments of $18,432.00 in the first year;

d.     Lease Payments of at least $18,892.80 in the second year;

e.     Lease Payments of at least $19,365.12 in the third year;

f.     The difference between the amount received by Plaintiff for (or were satisfied by) the loan of $39,753.55 and the repayment option of $81,900.00, if repurchased within the first twelve months, at least $83,947.50 if repurchased within twenty-four months and at least $86,046.19 if repurchased within thirty-six months plus closing costs and rents; and

g.     Excessive closing costs.

60.     Defendants' unlawful conduct caused injury to Plaintiff **CHLARSON** which resulted in the following damages:

a.     Statutory Penalties; and

b.     Attorney's fees.

61.     Plaintiff **CHLARSON** seeks unliquidated damages within the jurisdictional limits of this Court.

62.     Plaintiff **CHLARSON** is entitled to recover statutory penalties under Texas Finance Code § 305.001(a), that being the greater of the following:

      a.    Three times the amount by which the interest contracted for, charged, or received exceeds the maximum amount of interest allowed by the usury statute; or

      b.    $2,000.00 or 20% of the principal, whichever is less.

63.     In addition, since the interest charged and received under this contract exceeded twice the amount allowed by law, Plaintiff **CHLARSON** is seeking the forfeiture of all principal, interest and other amounts charged and received pursuant to Tex. Fin. Code § 305.002.

64.     Plaintiff **CHLARSON** is further entitled to recover reasonable attorney's fees under Texas Finance Code § 349.001 against Defendants **EK REAL ESTATE** and **EASYKNOCK**. Plaintiff has hired the undersigned attorneys to represent her interests in this matter and has agreed to pay the attorneys a reasonable rate for their services. Plaintiff **CHLARSON** seeks to recover her reasonable and necessary attorney's fees from Defendants, jointly and severally, in this matter in an amount as determined by the trier of fact.

## ADDITIONAL VIOLATIONS OF TEXAS FINANCE CODE GOVERNING LOANS AND FINANCED TRANSACTIONS §§ 341.011– 354.007, *et seq.*

65.     Plaintiff **CHLARSON** adopts all preceding paragraphs as if recited verbatim herein.

66.     At all times relevant hereto, **CHLARSON** is considered an "obligor" under the Texas Finance Code and Defendants **EASYKNOCK** and **EK REAL ESTATE's** "Sale-Leaseback transaction is a "loan" under the Texas Finance Code. *See* Tex. Fin. Code § 341.001(9) and (10). This loan transaction was subject to the requirements of Texas Finance Code § 342.001, *et seq.* (Consumer Loans) and § 343.001, *et seq.* (Home Loans).

67.     In connection with the loan transaction at issue in this case, Defendants **EASYKNOCK** and **EK REAL ESTATE** violated the Texas Finance Code, among other ways, by:

        a.      engaging in the business of making, transacting, or negotiating loans subject to this chapter without holding a license issued under this chapter, Tex. Fin. Code § 342.051;

        b.      failing to make required disclosures, Tex. Fin. Code § 343.102;

        c.      failing to provide required notices, Tex. Fin. Code § 343.105; and

        d.      engaging in a pattern or practice of extending credit to consumers under high-cost home loans based on the consumers' collateral without regard to the obligor's repayment ability, including the obligor's current and expected income, current obligations, employment status, and other financial resources, other than the obligor's equity in the dwelling that secures repayment of the loan, Tex. Fin. Code § 343.204.

68.     For violating these additional provisions of the Texas Finance Code, pursuant to Tex. Fin. Code. § 349.003, Defendants **EASYKNOCK** and **EK REAL ESTATE** are liable to **CHLARSON** for (1) three times the actual economic loss to **CHLARSON** that resulted from each violation; or, alternatively, (2) since each violation was material and induced **CHLARSON** to enter into a transaction that she would not have entered if the violation had not occurred, twice the interest or time price differential contracted for, charged, or received, not to exceed $4,000.00 because the amount financed exceeds $5,000.00. Defendants are also liable for **CHLARSON's** reasonable attorney's fees in an amount to be determined by this Court

## **COMMON LAW AND STATUTORY FRAUD**

69.     Plaintiff **CHLARSON** adopts all preceding paragraphs as if recited verbatim herein.

70.     Defendants **EASYKNOCK** and **EK REAL ESTATE** are liable to Plaintiffs for common law fraud, fraud by nondisclosure, fraudulent inducement, and, pursuant to Tex. Bus. & Com. Code § 27.0, statutory fraud.

71.     Specifically, as described throughout this Complaint:

a.      The Sale-Leaseback loan transaction is a transaction that involves real property in Texas, namely the Property.

b.      Defendants **EASYKNOCK** and **EK REAL ESTATE** made multiple misrepresentations, and they concealed or failed to disclose facts to Plaintiff despite a duty to do so.  Among other things, as described more specifically above, **EASYKNOCK** and **EK REAL ESTATE** falsely and misleadingly represented that they were authorized under Texas law to enter into the loan transaction that is the basis of this suit and that the Sale-Leaseback loan transaction was a home equity loan.

c.      Defendants made additional false, deceptive, and material representations in their marketing materials.  As described above, Defendants' marketing materials and emails described their Sale-Leaseback transaction to **CHLARSON** as an opportunity to "release" or "tap into" the equity in her home and that "part of the equity remains with [**CHLARSON's**] home," and that **CHLARSON** would retain at least a portion of her home equity. Defendants made these misrepresentations and concealed/failed to disclose facts to induce Plaintiff to enter into the Sale-Leaseback transaction for her Property.

d.      Defendants knew Plaintiff was unaware of the concealed/undisclosed facts and did not have an equal opportunity to discover these facts. Defendants were deliberately silent when they had a duty to speak about the concealed/undisclosed facts.

e.      The representations and omissions were material and false.

f.      Defendants made these representations or omitted material facts with the intent that Plaintiff rely on the representations or omissions.

g.      Plaintiff relied on these representations and Defendants' nondisclosure.

h.      In relying on these representations and without the knowledge of the undisclosed facts, Plaintiff **CHLARSON** was injured.

72.     For the common law fraud claims, Plaintiff seeks and is entitled to recover, jointly and severally from Defendants **EASYKNOCK** and **EK REAL ESTATE,** her actual damages, exemplary damages, costs of court, and pre-and post-judgment interest.

73.     For her statutory fraud claims, Plaintiff seeks and is entitled to recover, jointly and severally from the Defendants **EASYKNOCK** and **EK REAL ESTATE**, her actual damages, and, pursuant to Tex. Bus. & Com. Code § 27.01(d) and (e), exemplary damages, attorney's fees, expert witness fees, deposition-copy costs, costs of court, and pre-and post-judgment interest.

## **CONSPIRACY**

74.     Plaintiff **CHLARSON** adopts all preceding paragraphs as if recited verbatim herein.

75.     Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **LENDINGONE** are liable to Plaintiff **CHLARSON** for participating in a conspiracy.

76.     Each of the Defendants was a member of a conspiracy. They conspired to commit acts of fraud and other statutory and common law torts, as described above. In so doing, the Defendants had a meeting of the minds to accomplish the wrongful acts described above, committed one or more acts in furtherance of the conspiracy to commit the unlawful causes of action described above and caused Plaintiff actual harm as a result of their conspiratorial conduct.

77.     Accordingly, Plaintiff is entitled to recover from each conspirator Plaintiff **CHLARSON's** actual damages and exemplary damages, as well as for such conspirator's joint and several liability with the other actors concerning each cause of action described above. In connection, with the statutory torts, **CHLARSON** is entitled to recover from each conspirator, jointly and severally, her attorney's fees, expert witness fees, deposition-copy costs, costs of court, and pre-and post-judgment interest.

## AIDING AND ABETTING

78.     Plaintiff **CHLARSON** adopts all preceding paragraphs as if recited verbatim herein.

79.     Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **LENDINGONE** are liable to Plaintiff **CHLARSON** for aiding and abetting one or more of the others in the conduct described in this Complaint.

80.     Specifically, as described throughout this Complaint:

      a.     Each Defendant committed torts;

      b.     Each Defendant had knowledge that these primary actors' actions constituted torts;

      c.     the Defendants had the intent to assist these primary actors in committing the torts;

      d.     each of the Defendants gave the primary actors assistance or encouragement; and

      e.     the assistance or encouragement provided by the Defendants was a substantial factor in causing the tort.

81.     Alternatively, as described throughout this Complaint:

      a.     the primary actors' activity accomplished a tortious result;

      b.     each of the Defendants provided substantial assistance to the primary actors in accomplishing the tortious result;

      c.     each of the Defendants' own conduct, separate from the primary actors', breached duties owed to Plaintiff; and

      d.     the participation of each Defendant was a substantial factor in causing the tort.

82.     Plaintiff is entitled to recover damages from each of the Defendants, jointly and severally, for each cause of action they aided & abetted.

## JURY DEMAND

83.    Plaintiff **CHLARSON** demands trial by jury.


## PRAYER

Plaintiff **CYNTHIA CHLARSON** prays that the Court enter Judgment in favor of **CYNTHIA CHLARSON** jointly and severally against Defendants **EK REAL ESTATE SERVICES OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **LENDINGONE, INC.,** for the damages as set forth herein and for such other and further relief, in law or at equity, to which she may be justly entitled.


Dated: October 26, 2021.

Respectfully submitted:

By: /s/ Robin M. Ziek
        Robin M. Ziek
        Attorney at Law
        State Bar No.: 22262575
        24 Greenway Plaza, Suite 2050
        Houston, Texas 77046
        Telephone: (713) 222-8030
        Facsimile: (832) 565-9011
        rziek@sbcglobal.net

        POGACH PLLC

By:        /s/ Adam D. Pogach
        Adam D. Pogach
        State Bar. No.: 24048734
        24 Greenway Plaza, Suite 2050
        Houston, Texas 77046
        Telephone: (713) 524-5400
        Facsimile: (713) 524-5401
        adam@lawdifferent.com

FELDMAN & FELDMAN, P.C.

By: _____/s/ Cris Feldman_____
    Cris Feldman
    State Bar. No.: 24012613
    3355 W. Alabama St, 1220
    Houston, Texas 77098
    Telephone: (713) 986-9471
    Facsimile: (713) 986-9472
    cris.feldman@feldman.law

**ATTORNEYS FOR CYNTHIA CHLARSON**