IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CYNTHIA CHLARSON, | § § § § | |
| *Plaintiff*, | § § | |
| vs. | § § | 5-21-CV-01046-XR |
| EK REAL ESTATE SERVICES OF NY, LLC, EASYKNOCK, INC., LENDINGONE, LLC, | § § § § § | |
| *Defendants*. | § § § | |

**ORDER**

Before the Court are (1) the Motion to Compel Arbitration filed by Defendants EK Real Estate Services of NY, LLC, EasyKnock, Inc., and LendingOne, LLC, Dkt. No. 14, and (2) the Motion to Strike the Declaration of Barry Feierstein filed by Plaintiff Cynthia Chlarson, Dkt. No. 19. The motions were referred for disposition pursuant to Rules CV-72 and 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Mar. 30, 2022. The Court has authority to enter this Order pursuant to 28 U.S.C. § 636(b)(1)(A).[1]

---

[1] Although the Fifth Circuit hasn't specifically addressed, to the Court's knowledge, whether rulings on motions to compel arbitration are dispositive or nondispositive for purposes of § 636(b), circuit courts that have addressed the issue view such rulings as nondispositive, provided they don't result in dismissal of any claims and instead stay the litigation pending arbitration. *See, e.g., Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 Fed. App'x 131, 133-34 (3d Cir. 2014); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010). District court decisions from within the Fifth Circuit agree. *See, e.g., Adams v. Energy Transfer Partners*, No. 2:16-CV-400, 2017 WL 2347425, at *1 (S.D. Tex. May 30, 2017); *Tige Boats, Inc. v. Interplastic Corp.*, No. 1:15-CV-0114-P-BL, 2015 WL 9268423, at *1-3 (N.D. Tex. Dec. 21, 2015).

For the reasons discussed below, the Motion to Compel Arbitration, Dkt. No. 14, is **GRANTED IN PART** such that all claims asserted by Plaintiff Chlarson against Defendants EK Real Estate Services of NY, LLC and EasyKnock, Inc. shall be **COMPELLED** to arbitration. Defendant LendingOne's request to compel arbitration is **DENIED**. Chlarson's Motion to Strike, Dkt. No. 19, is **DENIED IN PART AND DISMISSED IN PART AS MOOT**. This case shall be **STAYED** pending the parties' completion of arbitration.

## Factual and Procedural Background

This case arises from a sale-leaseback transaction involving Plaintiff Cynthia Chlarson's homestead on Sandman Drive in San Antonio, Texas. Chlarson—a second-time property owner and single mother of four—purchased the property in 2017. *See* Chlarson Aff. ¶¶ 2-4 (Dkt. No. 18-1 at 5-14). Chlarson financed the purchase with an inheritance she received from her father's estate, along with a small $20,000 mortgage. *See id.*

By the fall of 2018, Chlarson had paid off the mortgage but was still struggling financially. *See id.* She owed more than $7,600 in past due taxes and homeowners association dues, and she needed financial help to assist her daughter with urgent medical expenses. *See id.* ¶¶ 5-6. With no savings, a low income, and bad credit, Chlarson sought—but was denied—a traditional home-equity loan from various conventional financial institutions. *See id.* ¶ 7. "Desperate for a way to stay afloat financially and help [her] daughter with her critical medical needs," Chlarson came across an advertisement for a company known as EasyKnock on Facebook. *See id.* ¶ 8. EasyKnock is comprised of Defendant EK Real Estate Services of New York—a single-member New York limited liability company—that itself has one member, Defendant EasyKnock, Inc., a Delaware private corporation. *See* Feierstein Decl. ¶ 1 (Dkt. No.

14-8). EasyKnock, according to Chlarson, advertised itself with the hashtag #releaseequity and urged its customers, "Don't Fear Losing Your Home." Chlarson Aff. ¶ 10.

In response to these advertisements, Chlarson reached out to EasyKnock and asked if they could help her. *See id*. In doing so, Chlarson told EasyKnock about her financial difficulties and inability to secure a traditional home-equity loan. *See id.* EasyKnock, in turn, proposed a transaction that Chlarson claims to have understood—based on EasyKnock's communications and advertising—as involving a loan against the property, secured by Chlarson's equity in that same property. *See id.* ¶¶ 9-14. In other words, Chlarson believed that she would retain ownership of the property at all times. *See id.*

On May 31, 2019, Chlarson and EK Real Estate executed a document entitled Residential Real Estate Sales Agreement. *See* Sales Agreement (Dkt. No. 14-2). The Sales Agreement identifies Chlarson as the "Seller" and EK Real Estate as the "Buyer." *Id.* In exchange for $194,000 in consideration, Chlarson "agree[d] to sell and convey" and EK Real Estate "agree[d] to purchase" the Sandman property. *Id.* ¶¶ 1-2. In that same document, the parties agreed that on or before the closing date they would enter into a "Lease with Tenant Option Agreement," which would permit Chlarson to continue occupying the property as a tenant and re-establish ownership upon payment of an agreed option purchase fee. *See* Sales Agreement ¶ 18 & Ex. A (draft Lease Agreement). Chlarson executed the Sales Agreement only in the presence of third-party notary, whom EasyKnock sent to the property on its behalf. Chlarson Aff. ¶14. According to Chlarson, she had "no time to view the documents prior to [the notary's] arrival [at her home]" and was uncomfortable with the process. *Id.* ¶ 15.

On May 31, 2019, EK Real Estate and Chlarson agreed to amend the Sales Agreement by, among other matters, increasing the purchase price to $195,000. *See* Amendment (Dkt. No.

14-7). The Amendment was allegedly premised on an appraisal EK Real Estate's lender Defendant LendingOne, LLC secured for the property. *See* Appraisal (Dkt. No. 14-5).

On June 28, 2019, Chlarson deeded the property to EK Real Estate, which in turn secured it with a $82,000 mortgage payable to LendingOne. *See* General Warranty Deed With Third Party Vendor's Lien (Dkt. No. 14-6). In exchange for the property, Chlarson received $39,753.55 in cash. *See* HUD Statement (Dkt. No. 14-4). The remainder of the $195,000 in consideration was applied to cover: (1) Chlarson's property taxes and homeowner's association dues (to cover all past-due amounts and as accrued pro rata through closing); (2) payment of a year's rent; (3) closing costs and fees; and (4) the option to purchase the property, which EK Real Estate valued at $117,000. *See id; see also* Sales Agreement ¶¶ 2-3 & Amendment. EK Real Estate subsequently filed the Deed in the Bexar County property records. Feierstein Decl. ¶ 26.

Shortly after closing and consistent with the parties' representations in the Sales Agreement, on June 28, 2019, Chlarson and EK Real Estate entered into a Lease Agreement. *See* Lease (Dkt. No. 14-1). Pursuant to the Lease Agreement, EK Real Estate, as the "landlord," agreed to lease the property to Chlarson, the "tenant," for an initial 12-month term, renewable annually for unlimited one-year terms. *See id.* ¶ 5. The Lease also included an option for Chlarson—prior to the Lease's expiration—to either: (1) terminate the Lease and re-purchase the Property for $81,900 (plus any applicable fees); or (2) request that EK Real Estate sell the property to a third party. *See id.* ¶ 6. In exchange, Chlarson agreed to pay $1,536 per month in rent for the initial 12-month term, to be increased each year after the initial term by the greater of

(1) 2.5% or (2) an amount reflecting the increase in the cost of living as reflected in the Consumers Price Index for all Urban Customers. *See id.* ¶ 5.[2]

The Lease also included the following arbitration provision:

> **21. ARBITRATION.**
>
> a) **Arbitration Requirement:** Except as provided below OR UNLESS TENANT SUBMITS A VALID ARBITRATION/CLASS ACTION WAIVER OPT-OUT NOTICE (AS DESCRIBED BELOW), any and all claims (each, a "Claim") between Tenant and Landlord will be resolved in binding arbitration rather than in court. Tenant and Landlord agree to submit to individual arbitration the resolution of any and all claims[] by or between Tenant and Landlord . . . . Tenant and Landlord agree that this Agreement affects interstate commerce, and that the enforceability of this section will be governed by, construed, and enforced, both procedurally and substantively, by the Federal Arbitration Act, 9 U.S.C. sections 1–9. Any arbitration will be administered by the American Arbitration Association ("AAA") pursuant to its then current Commercial Arbitration Rules (the "AAA Rules"), as modified by the terms set forth in this section 21.
>
> b) **Arbitration Procedure:** Any arbitration initiated by Tenant or Landlord shall be initiated in New York, New York. . . .

*Id.* ¶ 21(a), (b) (emphasis in original). The "Opt-out" provision explained that:

> **Opt-out**: Arbitration is not a mandatory condition of your contractual relationship with Landlord. If Tenant does not want to be subject to the arbitration provision set forth in this section 21, Tenant may opt out of the arbitration provisions by notifying Landlord, in writing, of Tenant's intent to opt out of the arbitration provision . . . Should you not opt-out of the arbitration provision set forth in section 21 within the thirty (30) day period, Tenant and Landlord shall be bound by the terms of the arbitration provision set forth in this section 21. Tenant has the right to consult with counsel of his, her or its choice concerning the arbitration provision set forth in this section 21. Tenant understands that Tenant will not be subject to retaliation if Tenant exercises his, her or its right to assert claims or opt-out of coverage under the arbitration provision set forth in this section 21.

*Id.* ¶ 21(d) (emphasis in original).

It's undisputed that Chlarson didn't notify EK Real Estate of an intent to opt-out of the arbitration agreement, either in accordance with the Lease Agreement's Opt-Out provision or

---

[2] Chlarson's option purchase price also increased by this amount each year following the initial term.

otherwise. *See* Feierstein Decl. ¶ 30. According to Chlarson, she was unaware of the arbitration clause itself or her ability to opt-out of it. Chlarson Aff. ¶ 27. Neither Easy Knock Inc. nor EK Real Estate mentioned these provisions prior to closing. *See id.* All documents, according to Chlarson, "were presented to [Chlarson] as a take it or leave it situation—meaning if [she] did not sign the documents presented to [her] by EasyKnock and EK Real Estate Services of NY, LLC [Chlarson] would not get the money [she] needed." *Id.*

Beginning in November 2020—after Chlarson exhausted her 12-month rent holdback—Chlarson began falling behind in her rent, often making late or partial payments. She is currently in arrears. *See id.* ¶¶ 32-34; Compl. ¶ 34. Although she continues to occupy the property, Chlarson claims that EasyKnock has threatened to institute eviction proceedings. *See id.*

On October 26, 201, Chlarson sued Defendants, claiming that they fraudulently induced her into the sale-leaseback transaction by falsely representing it as home-equity loan, failed to provide certain mandatory disclosures, and charged a usurious amount of interest. She brings claims against Defendants for: (1) suit to quiet title, pursuant to § 41.006 of the Texas Property Code; (2) declaratory relief that—among other matters—Defendants have no rights, title, or ownership in the property and that the General Warranty Deed is void as a matter of law; (3) violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602, and Regulation Z § 226.2 for failing to make certain allegedly mandatory disclosures in connection with the transaction; (4) violation of the Texas Deceptive Trade Practices Act; (5) usury in violation of Texas Finance Code § 305.001(a); (6) various violations of Texas Finance Code §§ 341.011-354.007; (7) common law and statutory fraud, *see* Tex. Bus. Code § 27.0; (8) conspiracy to commit acts of fraud and "other statutory and common law torts"; and (9) aiding and abetting one another in committing the aforementioned torts. This is one of over 25 cases filed throughout

the state of Texas by Chlarson's attorneys challenging the legality of EasyKnock's business model. *See* Dkt. No. 47 (Notice of Related Cases).

Defendants now seek to compel Chlarson's claims to arbitration pursuant to Paragraph 21 of the Lease. *See* Dkt. No. 14. Notwithstanding the Lease's requirement that arbitration occur in New York pursuant to the AAA's Commercial Arbitration Rules—to the extent arbitration is compelled—Defendants have agreed to arbitrate the case in the San Antonio area (at a location agreeable to Chlarson) pursuant to AAA's Consumer Rules. *See id.* at 16. Chlarson opposes arbitration, arguing that (1) it violates the Truth in Lending Act's prohibition on arbitration agreements involving mortgages secured by a party's primary dwelling; (2) the Deed itself is void under Texas law; (3) arbitration under these circumstances is both procedurally and substantively unconscionable; and (4) Texas policy prohibits parties from litigating a dispute involving real property in Texas in a different venue. *See* Dkt. No. 18.

On May 18, 2022, the Court held a hearing on the motion. All parties appeared through counsel of record. At the hearing, Defendants argued for the first time that the Lease's reference to AAA rules is a valid delegation provision vesting the arbitrator with authority to decide issues of arbitrability. Accordingly, the Court ordered the parties to file supplemental briefing on this and other issues. *See* Dkt. No. 50. The parties timely filed their supplemental briefing. *See* Dkt. Nos. 52 & 53.

**Analysis**

Defendants' Motion to Compel Arbitration merits relief. EK Real Estate and Chlarson entered into a valid arbitration agreement under Texas law that—by incorporating the AAA Rules —clearly and unmistakably vests the arbitrator with the responsibility to resolve issues of arbitrability. Accordingly, the Court need not—and indeed, cannot—reach Chlarson's merits-

based argument that the transaction constituted a residential loan incompatible with arbitration per the TILA. Chlarson's unconscionability and public-policy arguments also don't prevent arbitration under the circumstances presented here. Although EasyKnock wasn't a signatory to the agreement, the doctrine of intertwined-claims estoppel applies to permit EasyKnock to enforce the arbitration agreement. The Court, however, won't compel Chlarson to arbitrate her claims against LendingOne. Finally, the Court will exercise its discretion and stay all of Chlarson's claims so as not to undermine the arbitration proceedings.

   **A.** **EK Real Estate and EasyKnock's Motion to Compel Arbitration is Granted; LendingOne's Motion to Compel is Denied.**

Where an Arbitration Agreement contains a delegation clause—a provision that "transfer[s] the court's power to decide arbitrability to the arbitrator"—the Court's analysis of a motion to compel arbitration is "limited." *Kubala v. Supreme Prod. Servs., Inc*., 830 F.3d 199, 201-02 (5th Cir. 2016). In such a situation, the Court asks only (1) whether the parties entered into a valid arbitration agreement to arbitrate some set of claims and, (2) whether the agreement contains a valid delegation clause, that is, if it "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* The answer to both of these inquiries here is "yes" with respect to EK Real Estate. As for EasyKnock, it is entitled to enforce the agreement and likewise compel arbitration. Arbitration will therefore be compelled as to claims involving these parties.

   *1.* *There is a valid, enforceable arbitration agreement between Chlarson and EK Real Estate that EasyKnock—but not LendingOne—is entitled to enforce*. Whether the parties entered into a valid arbitration agreement turns on state contract law. *Id.* Here, the Lease contains

a choice-of-law provision selecting Texas's substantive law to govern,[3] and the parties agree that Texas law applies when determining the Agreement's validity. "The elements needed to form a valid and binding contract [under Texas law] are (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration." *Speedemissions, Inc. v. Bear Gate, L.P.*, 404 S.W.3d 34, 43 (Tex. App.—Houston [1st Dist.] 2013, no pet.) "Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam).

EK Real Estate has established through evidence, which is not meaningfully disputed, all the elements requisite for contract formation. In exchange for $195,000 in consideration, EK Real Estate offered to enter into a sale-leaseback transaction that included an agreement to arbitrate. Chlarson accepted the offer, as evidenced by her signature on the Lease and Sale Agreement. And, it's undisputed, Chlarson didn't opt-out—or even attempt to opt out—of the Lease's arbitration clause. Although Chlarson questions the fairness of the agreement given that she only received $39,753.55 in cash for a property with a $195,000 appraised value, "[a] court of law normally will not inquire into the adequacy of consideration supporting a contract." *Parker v. Dodge*, 98 S.W.3d 297, 301 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Moreover, Chlarson doesn't squarely argue that inadequacy of consideration renders the agreement invalid; she at most argues that the alleged unconscionability of the entire transaction provides a basis to invalidate the arbitration provision. In any event, the consideration provided here is not so "grossly inadequate as to shock the conscience." *City of Lubbock v. Phillips Petroleum Co.*, 41

---

[3] *See* Lease ¶ 20 ("This Agreement shall be governed, construed and interpreted by, through and under the laws of the state in which the Property is located, without regard to that state's conflicts of laws principles.").

S.W.3d 149, 161 (Tex. App.—Amarillo 2000, no pet.). Accordingly, there is no basis on the arguments presented here for the Court to look beyond the face of the contract on this issue and at this stage of the analysis. *See id.*

There is, however, a complication that none of the parties briefed but that nonetheless informs the Court's analysis. Neither EasyKnock nor LendingOne was a signatory on the Lease or the Sales Agreement. Under Texas law, where a non-signatory has a close relationship with one of the signatories and the claims are "intimately founded in and intertwined with the underlying contract obligations," the doctrine of intertwined estoppel permits the non-signatory to enforce the arbitration agreement. *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 401 (5th Cir. 2022). Such is the case here with respect to EasyKnock—the only member of EK Real Estate and the recipient of any notice or demand made under the Lease "or any other statute." Lease ¶ 19 (specifying that notices shall be given "To the Landlord EK: Real Estate Services of NY, LLC c/o Benjamin Black, EasyKnock, Inc."). Indeed, Chlarson treats EasyKnock and EK Real Estate as a single entity in her pleadings, raising "virtually indistinguishable factual allegations" against them. *See Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 611 (5th Cir. 2016) (noting district court properly applied principles of estoppel to compel arbitration where plaintiff treated signatory companies and non-signatory company as a "single unit" in his pleadings). Moreover, all of Chlarson's claims against EasyKnock are intertwined with her execution of the Lease and Sales Agreement as well as the parties' obligations thereunder. Accordingly, there is no basis to distinguish these defendants for present purposes.

A different result, however, pertains with respect to Chlarson's claims against LendingOne, which Defendants assert simply provided a business loan for EK Real Estate's purchase of the property. *See* Dkt. No. 14 at 9 n.6. There's no close relationship between EK

Real Estate and LendingOne sufficient to permit LendingOne, as a non-signatory, to enforce the arbitration agreement under an estoppel theory, at least based on this record. *See Hays*, 838 F.3d at 611 ("The 'close relationship' requirement guards against sweeping independent entities and even complete strangers into arbitration agreements, limiting the exception to instances of strategic pleading.") (quotations and brackets omitted). Nor does LendingOne argue that it is entitled to third-party beneficiary status. Accordingly, there's no valid agreement to arbitrate as between LendingOne and Chlarson.

    2.  *There is a valid delegation clause*. Turning to the second step in the analysis, the Court finds that a valid delegation clause exists here. The arbitration agreement provides that "[a]ny arbitration will be administered by the American Arbitration Association ("AAA") pursuant to its then current Commercial Arbitration Rules (the "AAA Rules")." Lease ¶ 21. "Under Rule 7 of the AAA rules, the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Edwards v. Doordash, Inc.* 888 F.3d 738, 746 (5th Cir. 2018) (quotations and brackets omitted). Accordingly, the arbitration agreement's incorporation of the AAA rules constitutes "clear and unmistakable evidence" that the parties intended to delegate to an arbitrator the power to decide arbitrability. *See id.; see also Cubria v. Uber Techs., Inc*., 242 F. Supp. 3d 541, 549-50 (W.D. Tex. 2017) ("Courts in the Fifth Circuit have concluded incorporation of the AAA rules demonstrates intent to delegate arbitrability even in cases involving unsophisticated plaintiffs") (collecting authorities).

  In reaching this conclusion, the Court recognizes that Defendants didn't raise the matter of the delegation clause in their motion. Nevertheless, Defendants raised the issue at the May 18

hearing, and briefed the issue in a supplemental memorandum, which the Court permitted both sides to submit. *See* Dkt. Nos. 50 & 53. Moreover, the docket readily reflects that Defendants have not proceeded in this litigation in a manner inconsistent with an intent to seek arbitration. Accordingly, Defendants haven't forfeited—or as Chlarson argues—waived the argument or the right to invoke the arbitration provision.[4] In any event, the Court may exercise its discretion under these circumstances and consider the argument at this juncture.[5] Notably, the presence of a delegation clause wasn't argued, let alone briefed, in *Jackson v. EK Real Estate Servs. of NY, LLC*—the only other case to rule on the matter of arbitration in this context. No. CV H-20-3867, 2021 WL 3831990, at *4 (S.D. Tex. Mar. 26, 2021), vacated, No. CV H-20-3867, 2021 WL 1658571 (S.D. Tex. Apr. 27, 2021) (denying motion to compel arbitration). Accordingly, *Jackson* doesn't inform the issues presented in this case.[6]

---

[4] *See, e.g.*, *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713-14 (2022) (providing that the waiver inquiry focuses on whether a party seeking to compel arbitration knowingly relinquished its right to arbitrate by acting inconsistently with that right); *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 12 (1st Cir. 2003) ("Where we are dealing with a forfeiture by inaction (as opposed to an explicit waiver), the components of waiver of an arbitration clause are undue delay and a modicum of prejudice to the other side."); *Lee v. PSI Services III, Inc.*, No. CV 18-1286 (BAH), 2019 WL 131956, at *1 (D.D.C. Jan. 8, 2019) ("The presumption of forfeiture may be overcome if the defendant's failure to [timely] compel arbitration did not prejudice his opponent or the court").

[5] *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) (rejecting respondent's argument that the doctrine of waiver applied because the petitioner didn't raise an argument until her reply brief in the proceedings below and noting "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *Thompson v. Dallas City Attorney's Office*, 913 F.3d 464, 471 (5th Cir. 2019) ("A district court does not abuse its discretion when it considers an argument raised for the first time in a reply brief so long as it gives the non-movant an adequate opportunity to respond prior to a ruling.") (quotations omitted); *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990) (stating that "practice of [waiving an issue not raised by an appellant in its opening brief] is, of course, not governed by a rigid rule but may as a matter of discretion not be adhered to where circumstances indicate that it would result in basically unfair procedure").

[6] *Lyons v. PNC Bank, Nat'l Ass'n*—a case which Chlarson relies on in her supplemental briefing—is similarly inapposite as it also didn't involve a delegation clause. 26 F.4th 180, 191 (4th Cir. 2022).

*3. Chlarson's counterarguments are unconvincing.* In light of the foregoing, EK Real Estate and EasyKnock's motion to compel arbitration must be granted. Chlarson's arguments that the deed transfer is void under Texas law or that the arbitration clause is unenforceable under the TILA don't warrant a different result.[7] The fact that Texas law may ultimately render the deed transfer void doesn't implicate the arbitration agreement's validity. Validity, in this context, is "limited to contract formation." *Doordash*, 888 F.3d at 744.[8] Moreover, in the absence of a challenge specifically to the delegation clause itself—an argument Chlarson doesn't raise here—enforceability challenges of this type must be resolved by the arbitrator. *See Rent–A–Ctr,*, 561 U.S. 63, 72 (2010) ("[U]nless [the plaintiff] challenged the

---

[7] Two provisions of the TILA, 15 U.S.C. § 1639c(e), entitled "Arbitration" are relevant to this case. First, § 1639c(e)(1) provides:

> No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction.

Second, § 1639c(e)(3) provides:

> No provision of any residential mortgage loan or of any extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer, and no other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit referred to in [§ 1639c(e)(1)], shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction, pursuant to section 1640 of this title or any other provision of law, for damages or other relief in connection with any alleged violation of this section, any other provision of this subchapter, or any other Federal law.

[8] *See also Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) (distinguishing between "validity or enforceability" issues, which are for the arbitrator, and "formation or existence," which are for the court, and explaining that "the category of arguments that question the very existence of an agreement include 'whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.'") (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)).

delegation provision specifically," the Court must treat it as valid and leave "any challenge to the validity of the Agreement as a whole for the arbitrator"). In other words, Chlarson's TILA challenge "relates only to the enforceability of the parties' agreement to arbitrate the *merits* of [her] claims, not the enforceability of the parties' separate agreement to arbitrate the *arbitrability* of h[er] claims . . . [It] is therefore an issue for the arbitrator to decide." *Attix v. Carrington Mortg. Servs., LLC*, No. 20-13575, --F.4th--2022 WL 1682237, at *2, 12-17 (11th Cir. May 26, 2022) (district court erred in refusing to compel arbitration where the parties' contract contained a valid delegation agreement and plaintiff's Dodd-Frank Act[9] challenge concerned the enforceability of the parties' primary agreement to arbitrate his claims, not whether the parties' delegation agreement was enforceable) (emphasis in original). And, nothing in the TILA provisions invoked here—either §1639c(e)(1) or (e)(3)—bars the delegation of questions of arbitrability.

As the Supreme Court recently explained, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).[10] Accordingly, the Court can't decline to give effect to the parties' valid delegation clause and resolve the merits of the dispute in this posture, as Chlarson urges. *See Henry Schein*, 139 S. Ct. at 530 ("We have held that a court may not "rule on the potential merits of the underlying" claim that is assigned by contract to an arbitrator, even if it appears to the court to be frivolous.") (quotations omitted). Indeed, Chlarson's primary argument in opposition to arbitration would require this Court to hold a mini-

---

[9] The Dodd-Frank Act amended the TILA, including by adding §1639c(e).

[10] *See also Attix*, 2022 WL 1682237 ("The Court's precedents make clear that, when an appeal presents a delegation agreement and a question of arbitrability, we stop. We do not pass go.").

trial on the merits of the case, in violation of "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 (1983).

Chlarson's unconscionability arguments are similarly unconvincing. Chlarson's procedural unconscionability argument implicates the validity of the Lease and Sales Agreement as a whole, as opposed to the delegation clause (or even the arbitration clause). It is therefore founded on an issue that is for the arbitrator. *See Rent–A–Center*, 561 U.S. at 72; *Buckeye Check Cashing*, 546 U.S. at 449. In any event, procedural unconscionability challenges of the type presented here are a matter of enforceability under Texas law, not contract formation.[11] *See* Tex. Bus. & Comm. Code § 2.302(a) (permitting a court to refuse to enforce a contract based on unconscionability); *Maravilla v. Gruma Corp.*, 783 Fed. App'x 392, 396 (5th Cir. 2019) (declining to consider plaintiff's procedural unconscionability argument that he couldn't read the contract and concluding that it was a matter for the arbitrator) (citing *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 129 (Tex. App.—El Paso 2018, no pet.) (procedural unconscionability arguments that concerned the circumstances surrounding the negotiation and signing of the contract as a whole are matters that must be presented to the arbitrator)). And by providing Chlarson with the ability to opt-out of arbitration, the agreement provided that Chlarson was "under no pressure or obligation to even enter the arbitration agreement." *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839, 848 (W.D. Tex. 2016) (opt-out clause undermined plaintiffs' procedural unconscionability challenge, notwithstanding argument that the delegation provision was buried within the arbitration agreement).

---

[11] "In determining whether a challenge is to formation itself or to subsequent enforcement, courts should apply state-law principles of contract." *Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 725 (5th Cir. 2020) (brackets and quotation marks omitted).

Chlarson's substantive unconscionability argument also lacks merit. She assails the arbitration clause itself;[12] not the delegation clause. *See Rent-A-Center*, 561 U.S. at 74 (refusing to consider substantive unconscionability argument that assailed arbitration procedures called for by the parties' contract where respondent didn't argue that the procedure "*as applied* to the delegation provision rendered *that provision* unconscionable.") (emphasis in original). In any event, it is mooted by Defendants' on-the-record representation that arbitration—if ordered—will occur in Bexar County, Texas pursuant to the AAA Consumer—as opposed to Commercial—Rules and would therefore be subject to a $200 consumer cap. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 300 (5th Cir. 2004) (plaintiff's prohibitive-cost argument was mooted by defendant's representation to the district court that it would pay all arbitration costs).[13] In that same vein, Chlarson's policy argument that Texas public policy mandates venue of any dispute involving real property in Texas to occur only in the county where the property is located is moot.

  **B.**  **A Stay on All Claims Asserted by Chlarson is Warranted**.

The Federal Arbitration Act provides for a stay pending arbitration. *See* 9 U.S.C. § 3. Indeed, "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (quotes omitted). Although a Court may dismiss—rather than stay—a case, it may only do so when all claims are subject to

---

[12] *See* Dkt. No. 18 ("Here, the arbitration clause itself is onerous.").

[13] Oddly, Chlarson objects to consideration of a portion of Feierstein's Declaration where Feierstein represents that "EasyKnock has since agreed that arbitration take place in the San Antonio area (at a location agreeable to Chlarson) pursuant to the AAA Consumer Rules." Dkt. No. 19 at 11 (citing Feierstein Decl. ¶ 31). But EK Real Estate and Easy Knock have made this concession both in Feierstein's declaration and on the record at the May 18 hearing. There's no basis to strike it as Chlarson requests.

arbitration. *See id.* Defendants clarified at the May 18 hearing that a stay—as opposed to dismissal—is their "preferred approach." And, as mentioned, Chlarson's claims against LendingOne LLC aren't subject to arbitration based on the arguments presently before the Court.

LendingOne, however, is also entitled to a stay pending Chlarson's arbitration with EK Real Estate and EasyKnock. Chlarson's claims against LendingOne are based on the "same operative facts" and are "inherently inseparable in any practical way from [Chlarson's] claims against [EK Real Estate and EasyKnock Inc]." *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002). Permitting Chlarson's claims to proceed against LendingOne while her claims against the other two defendants proceed to arbitration would "undermine the arbitration proceedings between [Chlarson, EK Real Estate, and EasyKnock], thereby thwart[ing] the federal policy in favor of arbitration." *Id.* Accordingly, the Court will exercise its discretion and stay all claims asserted by Chlarson against the Defendants.

## Conclusion

For the reasons discussed above and provided in Defendants' Motion to Compel Arbitration and supplemental briefing, the Motion to Compel Arbitration, Dkt. No. 14, is **GRANTED IN PART**. All claims asserted by Plaintiff Chlarson against Defendants EK Real Estate Services of NY, LLC and EasyKnock, Inc. shall be **COMPELLED** to arbitration. Defendant LendingOne's request to compel arbitration is **DENIED.**

**IT IS FURTHER ORDERED THAT** Chlarson's Motion to Strike, Dkt. No. 19, is **DENIED IN PART**—insofar as Chlarson objects to the Court's consideration of Paragraph 31 of Feierstein's Declaration concerning Defendants' agreement to arbitrate the case in San Antonio pursuant to the AAA Consumer Rules—and otherwise, **DISMISSED IN PART AS MOOT.**

The Clerk is **DIRECTED** to administratively close this case, pending completion of arbitration. *See Mire v. Full Spectrum Lending, Inc*., 389 F.3d 163, 167 (5th Cir. 2004) (explaining that district courts frequently make use of administrative closure to remove inactive cases from their pending dockets). The case may be re-opened in the future, without payment of filing fees, upon written motion from any party after conclusion of the arbitration proceedings, subject to the limited judicial review set forth in the Federal Arbitration Act.

**IT IS SO ORDERED**.

SIGNED this 1st day of July, 2022.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE